UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRAL BERNICE WADE,
on behalf of LTH,

        Plaintiff,                                  Civil Action No. 15-CV-12750

vs.                                              HON. BERNARD A. FRIEDMAN

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.
_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        This matter is presently before the Court on cross motions for summary judgment [docket entries 15, 20]. Pursuant to E.D. Mich. 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall deny plaintiff's motion and grant defendant's motion.

        Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying the application she filed on behalf of her son, "LTH," for Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held a hearing in January 2014 (Tr. 930-73) and issued a decision denying benefits in April 2014 (Tr. 15-35). This became defendant's final decision in June 2015 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

        Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the record de novo, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

At the time of the January 2014 hearing, LTH was 14 years and nine months old and he was in the ninth grade (Tr. 936). Plaintiff claims LTH has been disabled since January 2004[1], due to Attention Deficit Hyperactivity Disorder ("ADHD"), a learning disability, anger management problems, and asthma (Tr. 18, 77). The ALJ found that LTH's severe impairments are ADHD, a learning disability, speech and language delays, and an affective disorder (Tr. 21), but that he is not disabled because his impairments are not severe enough to meet or medically or functionally equal the requirements of the applicable listed impairment, i.e., Listing 112.11.[2]

---

[1] As the ALJ noted, SSI benefits are "not payable prior to the month following the month in which the application was filed" (Tr. 18). Therefore, despite the alleged disability onset date, the most relevant period for present purposes is March 2012 (when the application was filed) through April 2014 (when the ALJ issued her decision). During this time frame, LTH was in the seventh, eighth, and ninth grades in school.

[2] Under 20 C.F.R. § 416.924(d), a child seeking SSI benefits must meet the criteria of a listed impairment. In the present case, the applicable Listing is 112.11:

> **112.11 Attention Deficit Hyperactivity Disorder**: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of all three of the following:

Having reviewed the administrative record and the parties' briefs, the Court

1. Marked inattention; and

2. Marked impulsiveness; and

3. Marked hyperactivity;

and

B. For . . . children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Listing 112.02(B)(2), in turn, states:

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/ communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

3

concludes that the ALJ's decision in this matter is supported by substantial evidence. While LTH clearly has the severe impairments of ADHD, a learning disability, speech and language delays, and an affective disorder, the ALJ reasonably concluded that these impairments are not sufficiently severe to satisfy the applicable Listing.

The ALJ found that LTH's impairments do not meet or medically equal the criteria of Listing 112.11. Plaintiff does not appear to challenge this conclusion. The ALJ therefore proceeded to determine whether LTH's impairments functionally equal this Listing. Under 20 C.F.R. § 416.926a(b)(1), this required the ALJ to consider LTH's functioning in the following six "domains": (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. Functional equivalence of a listed impairment is present only if the claimant has "marked" limitations in at least two of these domains or "extreme" limitations in one domain. *See* 20 C.F.R. § 416.926a(a). The regulations define the term "marked limitation" as follows:

> (2) Marked limitation.
>
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. . . .
>
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a

4

> valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. (See paragraph (e)(4) of this section.)

20 C.F.R. § 416.926a(e)(2).

In the present case, the ALJ found that LTH has no limitation in the fourth domain and "less than marked limitation" in the other five domains (Tr. 28-35). Plaintiff argues that the ALJ erred in his findings as to the first and second domains only. *See* Pl.'s Summ. J. Br. at 15-22. Therefore, the narrow issue before the Court is whether substantial evidence supports the ALJ's findings that LTH does not have marked limitations in the two areas of acquiring and using information, and attending and completing tasks. Regarding the first of these, the regulations state in relevant part:

> (g) Acquiring and using information. In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.
>
> (1) General. . . .
>
> (ii) Thinking is the application or use of information you have learned. It involves being able to perceive relationships, reason, and make logical choices. People think in different ways. When you think in pictures, you may solve a problem by watching and imitating what another person does. When you think in words, you may solve a problem by using language to talk your way through it. You must also be able to use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something.
>
> (2) Age group descriptors— . . .
>
> (iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to

5

demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

(v) Adolescents (age 12 to attainment of age 18). In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

(3) Examples of limited functioning in acquiring and using information. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.

(ii) You cannot rhyme words or the sounds in words.

(iii) You have difficulty recalling important things you learned in

school yesterday.

(iv) You have difficulty solving mathematics questions or computing arithmetic answers.

(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a.

Regarding the second domain at issue in this case, the regulations state in relevant

part:

(h) Attending and completing tasks. In this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.

(1) General.

(i) Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.

(ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate timeframe.

(2) Age group descriptors— . . .

(iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a

7

2:15-cv-12750-BAF-RSW   Doc # 23   Filed 08/09/16   Pg 8 of 15   Pg ID 1104

variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

(v) Adolescents (age 12 to attainment of age 18). In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

(3) Examples of limited functioning in attending and completing tasks. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.

(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.

(iii) You repeatedly become sidetracked from your activities or you

frequently interrupt others.

(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.

(v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a.

After summarizing the evidence, the ALJ gave the following explanation for finding that plaintiff's limitations in these two domains are "less than marked":

> The claimant has less than marked limitation in acquiring and using information. The claimant testified that he enjoyed spending his days at the park and liked spending his free time with his friends. He stated that he would spend several hours a day on Call of Duty, a video game and had no difficulty learning the concepts of the game [and] then utilizing them. The claimant's mother testified that her son had done well while in a learning disabled class, earning all As and Bs and attaining the honor roll while there. He was briefly taken out of those classes and placed in regular classes where his performance was at or near failing but according to the medical records he has been placed back in the learning disabled classes. (Ex. 12F/30). The Detroit Public Schools reported that the claimant had been making poor progress towards his academic goals but they attributed this to "poor attendance" and believed that his attendance deeply affected his overall performance in the classroom. (Ex. 2F/3). A year later in March 2012, the claimant's MEAP scores (the State of Michigan's educational aptitude test) showed the claimant to [be] performing at the 6th grade reading level, which was exactly where the claimant was supposed to be. (Ex. 3F/2). Still, the claimant's poor attendance was blamed for continued poor performance in school. (Ex. 4F/2). Testing performed by the Northeast Guidance Center in April 2013 showed the claimant to be at or near all of his subject matter aptitudes. (Ex. 10F/3).
>
> *   *   *
>
> The claimant has less than marked limitation in attending and completing tasks. The claimant did not describe himself as "hyperactive" but stated that he believed that he was "lazy". The claimant's mother disagreed with her son's statements and believed her son's problems stemmed from not understanding the assigned

work and not from him being "lazy". He noted that he had few problems paying attention to those things that he really enjoyed doing, such as playing "Call of Duty" and working in gymnastics. A March 2012 assessment performed by the Detroit Public Schools would tend to agree with the claimant's statements though they used the term "apathetic" instead of "lazy" to describe the claimant's attitude towards school. (Ex. 3F/2). He has presented to his therapist with hyperactive behavior in the past. (Ex. 5F/1). However, in subsequent interviews at the Northeast Guidance Center the claimant presented as friendly or cooperative. (Ex. 12F/7; Ex. 12F/3). There is no report from teachers that the claimant has a marked inability to attend to or complete assigned tasks. (Ex. 3E/4; Ex. 17E/3).

(Tr. 28, 29-30.)

Substantial evidence supports the ALJ's finding that LTH's ability to acquire and use information is not markedly limited. As the above-quoted regulation makes clear, the inquiry in this domain is whether the claimant can do such things as think, use language in daily living situations, follow directions, ask for information, give explanations, read, write, do math, discuss history and science, read street signs, tell time, make change, go to the store, use a library, use public transportation, and follow instructions. Examples of limitations in this domain include such things as having difficulty understanding words describing space, size, or time; being unable to recall important things learned recently in school or to solve math problems; and being able to speak only in a primitive way. While LTH clearly has difficulty with some subjects in school and exhibits some behavioral problems at home, the record nonetheless supports the ALJ's finding that he is not markedly impaired in this domain. As noted by the ALJ, when LTH has been provided with additional support and attention at school in a special education or "LD" setting, he has earned average and even above average grades,[3] as shown in his report cards for sixth through ninth grades

_____

[3] This history is noted repeatedly in the progress notes from Northeast Guidance Center, where LTH was seen regularly during the relevant time period. For example, in notes dated

10

(Tr. 247-48, 255), although he does perform below his grade level (Tr. 186 [sixth grade]), 276 [seventh grade], 177 [eighth grade], Tr. 216 [ninth grade]).   In these years, which are the most relevant for present purposes (*see* n.1, *supra*), LTH earned generally average grades in English, reading, spelling, and math, the subjects particularly relevant to this domain.   In sixth grade, when LTH was placed in regular classes and not provided with the additional support of the LD class setting, his performance suffered (Tr. 246, 269, 292).   The ALJ also correctly noted the many statements in LTH's school records suggesting that his performance suffered because of poor attendance (e.g., Tr. 156, 177, 179, 186-77, 269).   The ALJ reasonably concluded that this, rather than any marked impairments in LTH's ability to acquire and use information, explains his substandard academic performance.   Additionally, LTH's seventh and ninth grade teacher evaluations, which commented specifically on ten aspects of this domain, noted "no problem" or "a

---

March 19, 2013, psychologist Jana Buchanan recounted:

> Client was delayed in his speech and reading, and was placed into an LD classroom in 3rd grade.   Mom reported that with the LD classroom and prescribed medication, client began to make much improvement with his focus and academic performance.   Client was eventually placed back into a regular classroom setting for making improvement, but his grades dropped significantly to D's and F's.   In result, client was placed back in an LD classroom and has been earning B's, C's and D's since. . . .

(Tr. 324.)   Similarly, in March 2012 it was noted:

> [LTH] is currently in the 7th grade at Marquette. [He] was previously in an LD classroom and was achieving honor roll status.   However, at the end of 5th grade, [he] was moved to a regular classroom setting and his grades then dropped to D's and F's.   For all of 6th grade Mom advocated for him to be placed back in an LD classroom and that finally occurred at the start of this school year.

(Tr. 349.)

11

slight problem" in half of them in the seventh grade and in seven of the ten in ninth grade (Tr. 151, 217).

Substantial evidence also supports the ALJ's finding that LTH is not markedly limited in attending and completing tasks. As the above-quoted regulation makes clear, the inquiry in this domain is whether the claimant can do such things as follow directions, remember and organize school materials, complete assignments, participate in group sports, read independently, complete chores, get ready for school, and change classrooms. Examples of limitations in this domain include such things as being easily startled or distracted, being slow to focus on or complete activities of interest, repeatedly becoming sidetracked, being easily frustrated, and requiring extra supervision to stay engaged in an activity. Again, while LTH has some difficulties in these areas, the ALJ reasonably found that he is not markedly limited. The record contains many references to the fact that LTH is performing better in school (and that his ADHD symptoms have lessened) with medication (Tr. 160, 288, 319, 323-24, 343, 377, 402, 419, 484). His seventh and ninth grade teacher evaluations, which commented specifically on 13 aspects of this domain, noted "an obvious problem" in a few areas but mainly "no problem" or "a slight problem" in most areas (Tr. 152, 218). In March 2012, LTH's therapist noted he "is good at games, proud of his reading achievements, and enjoys football, martial arts" (Tr. 337). In June 2012 the therapist noted that LTH "made great improvements in school over the past few months. [He] was focused in the classroom, completed his work in class and at home" (Tr. 359). The ALJ also noted the testimony from LTH and plaintiff to the effect that LTH has no difficulty focusing for hours at a time on the activities he enjoys.[4]

---

[4] Plaintiff faults the ALJ for "not address[ing] either the psychological evaluation of May 31, 2013 (Tr. 634-637) or the IEP completed on April 9, 2013 (Tr. 236-244) anywhere in her decision." Pl.'s Summ. J. Br. at 19. However, plaintiff does not point to any information or

The ALJ's decision in this matter is further supported by the opinion of Drs. Issa and Leno, who reviewed LTH's records for the Disability Determination Service through June 2012 and concluded that his impairments do not meet or equal the Listings, including Listing 112.11 (Tr. 66-72). Nor do the hundreds of pages of progress notes from the Northeast Guidance Center (Tr. 287-561, 638-929), where LTH received medical, psychiatric, and counseling services during the relevant time period, contain any findings or opinions to undermine the ALJ's conclusions that his impairments do not meet or equal Listing 112.11.[5]

Finally, the most recent psychological evaluation (Tr. 634-37), dated May 31, 2013, supports the ALJ's conclusion that LTH's impairments are not of disabling severity. The summary paragraph is this evaluation states:

> During administration of formal tests he initially put forth moderate effort. However as the session progressed he complained of boredom and eventually began to deliberately respond incorrectly to test questions. Based on test data, [he] is presently functioning at the Borderline range with a WISC-IV Full Scale IQ score of 73. On the

_____

conclusions contained in these exhibits (10F and 19E, respectively) that are not also contained elsewhere in the record. The April 2013 IEP (Ex. 19E) indicates that LTH was an eighth grade student performing in various areas at a sixth grade level; that he "has very good comprehension skills" and "scored proficient on last years MEAP test in Reading"; but "needs a bit of motivation to really thrive academically along with sped [sic: special ed] support" (Tr. 238). As noted below, the May 2013 psychological evaluation (Ex. 10F) similarly found that LTH is functioning below his grade level and would benefit from an LD classroom environment (Tr. 636-37). Therefore, plaintiff has failed to show the significance, if any, of the ALJ's failure to comment specifically on these exhibits.

[5] Plaintiff faults the ALJ for "fail[ing] to accord adequate weight to the opinion of the minor's treating physicians at Northeast Guidance Center." Pl.'s Summ. J. Br. at 23. However, she cites only generally to the hundreds of pages of progress notes and treatment records from this guidance center without identifying any specific opinion of any treating physicians or other treating sources. The only opinion evidence anywhere in the record as to whether LTH meets or equals Listing 112.11 is from Drs. Issa and Leno who determined that the Listing is not met or equaled (Tr. 66-72).

> WRAT-4 [he] is presently functioning almost 4 grade levels below his reported 8th grade education in tasks that require spelling skills. He is as much as 3 grade levels below in word recognition and mathematical computation and is as much as 2 grade levels behind in tasks that require sentence comprehension. His behavioral style likely interfered with overall higher performance.

(Tr. 636.) The psychologist recommended that LTH be reassessed for placement in an LD classroom setting; that his medications be monitored for compliance; and that he receive "[s]upportive counseling with social skills training" (Tr. 637).[6]

The Court concludes that the ALJ's decision in this matter is supported by substantial evidence. While LTH clearly has ADHD, a learning disability, and anger problems, the ALJ reasonably found that these impairments are not equal or equivalent to a listed impairment. Specifically, substantial evidence supports the ALJ's findings that LTH is not markedly limited in his ability to acquire and use information or to attend and complete tasks. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

---

[6] Plaintiff correctly notes that the ALJ erred in stating that "[t]esting performed by the Northeast Guidance Center in April 2013 showed the claimant to be at or near all of his subject matter aptitudes." Pl.'s Summ. J. Br. at 17, quoting Tr. 28. The April 2013 testing showed plaintiff to be functioning at between two and four "grade levels below his reported 8th grade education" (Tr. 635-36). Despite the ALJ's misstatement as to these test results, the fact remains that this psychological evaluation does not undercut the ALJ's conclusion that LTH's ability to acquire and use information is not markedly limited.

14

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.


                                        S/ Bernard A. Friedman_____
Dated: August 9, 2016                   BERNARD A. FRIEDMAN
        Detroit, Michigan               SENIOR UNITED STATES DISTRICT JUDGE

15